179 F.Supp. 297 (1959)
Leon STRAUSS
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated association by John Backhus and Bernard Marcus, Trustees ad litem and Bernard Marcus in his own right.
Civ. A. No. 27358.
United States District Court E. D. Pennsylvania.
December 30, 1959.
*298 Edward B. Bergman, Philadelphia, Pa., for plaintiff.
Edward Davis, Philadelphia, Pa., for defendants.
CLARY, District Judge.
This suit arises under the recent Labor-Management Reporting and Disclosure Act of 1959, Public Law 86-257, 29 U.S.C.A. § 401 et seq. (hereinafter referred to as the "Act"). Section 504 of that Act is designed to prohibit certain persons (whom Congress determined were undesirable for the labor movement) from holding any office in a labor union. The question of whether Leon Strauss, the plaintiff in the present case, is such a person, produced the present controversy.
The plaintiff has been employed consistently since 1954 as a Business Agent for Local 596 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Prior to this employment, he had served a term of imprisonment for a conviction of armed robbery in 1941. He was released from the Eastern State Penitentiary in Philadelphia on November 2, 1949. At that time he was placed on parole. This period of parole ended on February 11, 1956, when he had completed his full sentence.
On or about November 20, 1959, Strauss received word that he was relieved of his position as Business Agent of Local 596. The discharge was accomplished because of a telegram sent by the defendant International Union to Bernard Marcus, the Trustee of Local 596. Pursuant to this telegram, Strauss received written notice of his discharge from the Trustee of the Local. The basis for the discharge was stated by the Local to be § 504 of the Labor-Management Reporting and Disclosure Act of 1959, the pertinent part of which states:
"(a) No person * * * who has been convicted of, or served *299 any part of a prison term resulting from his conviction of, robbery * * * shall serve
"(1) As * * * business agent * * * of any labor organization, * * * for five years after such conviction or after the end of such imprisonment * * *."
The defendant union construed the word "imprisonment" as used in this Act to include any period of parole. Since it has been less than five years since Strauss' parole ended (although clearly more than five years since his release from the Eastern State Penitentiary), they conclude that he fell within the prohibition of § 504 and must therefore be discharged.[1]
The plaintiff disagrees with this construction of the Act. He argues that "imprisonment" as used here refers to the time of actual confinement inside a prison, and that since Strauss was released from the Eastern State Penitentiary in November of 1949 he is clearly outside the reach of § 504, and was therefore improperly discharged. The Act itself contains no definition of the word "imprisonment".
The complaint states the aforementioned facts along with a claim that (1) the discharge in addition violates § 101 (a) (5) of the Act, and (2) the discharge is unauthorized and illegal for the further reason that plaintiff was discharged by H. J. Gibbons, described as "Executive Assistant to the General President", and such an officer has no authority to act for the International in discharging anyone.
The plaintiff seeks sweeping equitable relief, including reinstatement to his position as Business Agent. He also asks for a declaratory judgment as to the meaning of the word "imprisonment" as used in § 504.
Oral argument was heard on a rule to show cause why an injunction should not issue pending determination of the action for permanent injunctive relief. All of the essential facts having now been agreed upon by the parties, the resolution of a question of national concern in the labor field would appear imminent. Unfortunately such is not the case.
This Court upon its own motion and after a careful examination of the question involved feels constrained to dismiss the action for lack of jurisdiction over the subject matter. We do so reluctantly and despite the fact that the defendant has raised no objection to our jurisdiction. It is indisputable that this Court must independently examine the question of jurisdiction whenever a serious doubt arises as to its existence. When in our independent judgment we conclude that no such jurisdiction exists, the case must be dismissed.
In the present case the plaintiff rests jurisdiction upon three sections of the Labor-Management Reporting and Disclosure Act (§§ 101, 102 and 504), and also upon § 2201 of Title 28 U.S.C.A. (popularly referred to as the Declaratory Judgment Act). We will discuss each of these contentions below.
Section 102 of the Act authorizes suit for civil enforcement of any right secured by the provisions of Title I (sections 101 through 105). For plaintiff to properly rest jurisdiction upon § 102 or any of the other sections in Title I, it must appear that the right, title or interest which he alleges has been violated by the defendant is created by or finds protection under one of these sections. We are convinced that such is not the case in this action.
The right which plaintiff now seeks to protect as against the defendant is the right to be free from discharge as business agent of a labor union, when that discharge is based solely upon the union's honest misinterpretation of a new Federal law. The plaintiff was not elected to this position nor does it appear that *300 the position necessarily required his being a member of the local union. As between the parties to this suit, this is at best a contractual right or a right of "status".
Upon a careful reading of the provisions of Title I, it is clear that no such right is encompassed by any section of that title. Without entering into a detailed discussion of each of its provisions, we observe that this part of the Act deals with (and is directed toward) the membership in general and their relationship, as members, with their union. The rights which are created are repeatedly referred to as "the right of any member" or "the right of every member". The rights themselves are internal civil and political rights such as the right to vote in elections § 101(a) (1), to nominate candidates § 101(a) (1), to participate in deliberation of issues § 101(a) (1), to freedom of speech and assembly § 101(a) (2), to participate in the fixing of dues, initiation fees and assessments § 101(a) (3), the right to due process in disciplinary actions resulting in fine, suspension, expulsion, or other discipline § 101(a) (2, 5), and the right to copies of collective bargaining agreements § 104.
In short, this Title deals with the union-member relationship and in no way supports jurisdiction of a suit involving the employer (union)-employee (business agent) relationship which is the essence of the present suit. Such a case turns more properly on the common law of employment contracts, or employment "status" as a property right, matters which are outside the scope of Title I.
A further word may be added as to § 101(a) (5), which plaintiff specifically cites as having been violated by the defendant. This section states that:
"No member of any labor organization may be fined, suspended or expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."
It might be sufficient to again point out that the plaintiff does not claim the violation of any right based on his membership in Local 596. Here the plaintiff is not being "fined" or "suspended" or "expelled" as those words are used in § 101(a) (5), nor was his removal from office an act of discipline. If anything, it was a breach of an employment contract, a matter not within the purview of § 101 as we interpret it.
Plaintiff next states that jurisdiction is based on § 504 of the Act. This is the section quoted earlier, which deals with the prohibition against certain convicted persons from holding office in any labor organization for a certain period of time. Since the section merely creates a duty on the part of labor unions to prohibit particular persons from holding office, and in no way purports to create a Federal right, we must assume that plaintiff had in mind jurisdiction based upon a suit "arising under the Constitution, laws or treaties of the United States". (28 U.S.C. § 1331), the particular "law" in question being § 504 of the Act. This argument, which we feel is the only one which raises a serious question as to jurisdiction, will be taken up after a brief discussion of plaintiff's remaining ground for jurisdiction, which is the Declaratory Judgment Act, Title 28 U.S.C.A. § 2201.
The Declaratory Judgment Act authorizes a Federal court to issue a declaratory judgment "[I]n a case of actual controversy within its jurisdiction * * *." It is well settled that this section is procedural only and in no way extends the jurisdiction of Federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 1949, 339 U.S. 667, at page 671, 70 S.Ct. 876, at page 879, 94 L.Ed. 1194. Only where jurisdiction already exists does this section come into operation. Since there is no diversity here, and the Labor-Management Reporting and Disclosure Act does not confer jurisdiction, we are left without jurisdiction in this matter unless, as above mentioned, *301 the suit falls within Title 28 U.S. C.A. § 1331, the so-called "Federal question" jurisdiction. For the reasons stated below, we feel that it does not.
It is an admittedly difficult question to determine when, and under what conditions, a "Federal question" an action arising under the laws of the United States  is involved in a claim for relief. Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. Like so many other questions of law which have been much considered in cases and textbooks, support may be gathered for either an affirmative or negative answer to its existence in any particular case. However, after a careful review of the authorities, we conclude that there is a negative test which is controlling on this question and which is clearly met here. That is, if the right, title or interest sought to be protected by the plaintiff does not arise out of Federal law (as opposed to State law, common or statutory), then the suit is not one "arising under the * * * laws * * * of the United States".
A case which perfectly illustrates this test, and which we feel is directly in point with our own case is Louisville & Nashville Ry. Co. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126. In that case suit was brought to compel specific performance of a contract whereby the defendant railroad, for valuable consideration, had agreed to issue to the plaintiff free railroad passes annually. The Circuit Court, 150 F. 406, overruled a lower court's decision sustaining a demurrer and granted specific performance. The Supreme Court on appeal reversed the Circuit Court and dismissed the case for lack of jurisdiction over the subject matter, despite the fact that the plaintiff alleged in his bill that the reason the defendant refused to perform the contract was because they interpreted a newly enacted Federal law as prohibiting the issuance of such passes.
A number of other Supreme Court and lower court cases in this area would lead us to the same result. Skelly Oil Co. v. Phillips Petroleum Co., supra; Gully v. First National Bank, supra, (in which Mr. Justice Cardozo stated, "How and when a case arises `under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." 299 U.S. at page 112, 57 S.Ct. at page 97.) (Emphasis added); Puerto Rico v. Russell & Co., 1932, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903. See also Beistline v. City of San Diego, 9 Cir., 1958, 256 F.2d 421, at page 423; Screven County v. Brier Creek Hunting & Fishing Club, 5 Cir., 1953, 202 F.2d 369; Hettenbaugh v. Airline Pilots Ass'n International, 5 Cir., 1951, 189 F.2d 319, at page 320; Andersen v. Bingham & G. Ry. Co., 10 Cir., 1948, 169 F.2d 328, at page 330, 14 A.L.R.2d 987; (but see St. Louis, I. M. & S. R. Co. v. Taylor, 1908, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061); Nello L. Teer Co. v. J. A. Jones Const. Co., D.C.M.D. N.C.1958, 160 F.Supp. 345; Allen v. Southern Ry. Co., D.C.W.D.N.C.1953, 114 F.Supp. 72; Jacobson v. New York, New Haven & H. Ry. Co., D.C.D.Mass.1953, 109 F.Supp. 513, at page 515.
In the present suit, as has been already pointed out, the right which the plaintiff asserts is in the nature of a contract right.[2] This right is enforcible, if at all, in the common law courts of the state in which the contract arose  in this case, Pennsylvania. We find nothing in the recent Labor-Management Reporting and Disclosure Act which indicates an intention by Congress to enter such an area. The most liberal interpretation of that Act imaginable would not, in our view, encompass the right upon which the plaintiff relies. *302 Accordingly, we must reject the theory that there is "Federal question" jurisdiction here.[3]
Since there appears to be no other basis on which to rest jurisdiction, we have no choice but to dismiss the action. This, of course, obviates any need for passing upon the other ground on which plaintiff based his suit.
NOTES
[1] § 504(b) makes the willful violation of § 504(a) by permitting any person to assume or hold any office in violation of the section, a crime punishable by a fine of up to $10,000 and imprisonment for not more than one year, or both.
[2] See Truax v. Raich, 1915, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, Opinion by Hughes, C. J., for a full discussion of the effect of a state statute limiting employment.
[3] There is also a need to establish the $10,000 jurisdictional amount under Title 28 U.S.C.A. § 1331, which the plaintiff has failed to do here. Although he has not stated his present salary, there is real doubt as to whether the present case would constitute a controversy involving [more than] $10,000.