James GROSS, Plaintiff,

v.

Eugene A. KENNEDY, individually and as General Manager of Local 1500, Retail Food Clerks' Union, and Retail Clerks' International Association, Local 1500, Retail Food Clerks' Union, and Food Fair Stores, Inc., Defendants.

United States District Court
S. D. New York.

April 8, 1960.

Lee Pressman, New York City, for plaintiff. Ned R. Phillips, New York City, of counsel.

Patrick J. Picariello, New York City, for defendants Eugene A. Kennedy, individually and as General Manager of Local 1500, Retail Food Clerks' Union, and Retail Clerks' International Ass'n, Local 1500, Retail Food Clerks' Union.

Nathan W. Math, New York City, for defendant Food Fair Stores, Inc.

LEVET, District Judge.

This is an action allegedly arising under the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter designated as the "Act"). By an order to show cause dated February 9, 1960, plaintiff moved for a preliminary injunction pending determination of his action for a permanent injunction ordering the defendants (1) to revoke the order of the Grievance Board of defendant Local 1500, Retail Food Clerks' Union (hereinafter designated as the "union") removing plaintiff from his employment at defendant Food Fair Stores, Inc. (hereinafter designated as "Food Fair"); (2) to reimburse plaintiff for all lost wages at his regular rate of pay when last employed by Food Fair, less any wages earned in mitigation; (3) to cease and desist from violating Title 1, Section 101(a) (5) of the Act, 29 U.S.C.A. § 411(a) (5), and the Constitution and By-Laws of said union.

By order of motion filed February 19, 1960, defendant Food Fair moved to dismiss the action against it on the ground that the court lacked jurisdiction over

the subject matter. A similar motion was made by the union.

Affidavits were submitted by plaintiff and by the defendants upon the motion for a preliminary injunction. Upon a further argument of this motion and the motions made by defendants on March 18, 1960, counsel were notified that the defendants' motions would be deemed motions for summary judgment. At this hearing defendants orally moved for summary judgment on the papers theretofore presented. Plaintiff's counsel was given an opportunity to submit any further affidavits on the merits which he might choose, but although he offered to submit proof solely relating to lack of justification for the discharge, he declined to submit any other proof, and in view of the fact that the court took the position that the facts proposed in the aforesaid proffer were not relevant here, plaintiff submitted no other affidavits or proof.

Plaintiff alleges that he was employed as a retail clerk by defendant Food Fair for nine years. During this period he was required to be and was a member in good standing of the defendant union. He states that by letter of the union dated December 1, 1959, which he received December 4, 1959, he was ordered to appear before the Grievance Board of the union on December 7, 1959. This communication stated: "You are hereby officially notified to appear before the Grievance Board on Monday, December 7, 1959 at 7:30 P.M. at the above address to answer charges brought by the Company for breaking Company Policy. It is imperative that you comply with the above request." Exhibit A, affidavit of James Gross.

Plaintiff maintains that on December 7, 1959, before the Grievance Board, he was "subjected to a so called trial at which inter alia, he was excluded from the room while testimony was given against him, given no opportunity to confront or cross-examine witnesses testifying against him before a body which had no constitutional authority to try him or render a decision, for offenses of which he was never given notice without opportunity to prepare a defense or summon witnesses in his own behalf." Complaint, Par. IX.(3).

At the conclusion of the proceeding, plaintiff contends that he was ordered removed from his job by the presiding officer of the Grievance Board, who informed a company representative that a replacement for plaintiff would be sent to the store the next day. He states that at no time was he notified by the company or any person acting on behalf of the company that he was discharged.

Plaintiff made two appearances before the Executive Board for reinstatement and compensation for lost wages. His request was denied. The notification of this denial sent by the General Manager of the union advised plaintiff's attorney: "The Executive Board meeting was on Tuesday, January 26. After hearing all of the facts of the James Gross case, the Executive Board sustains the *recommendation* of the *Grievance Board that he be taken off the job* and report to the employment office of the union." Exhibit D. (Emphasis supplied.)

Article IV, Section 2(a) of the Constitution and By-Laws of the union gives the Executive Board of the union the power to remove a member from his job. This section reads: "Duties and Powers of The Executive Board. The Executive Board shall have the right to try, hear and determine and even suspend or expel a member. It may remove a member from his job in accordance with the Constitution."

Plaintiff states that he was never discharged by the company; that the disciplinary machinery of the union was invoked; that he was denied his rights under the Act as well as under the union Constitution and By-Laws.

At issue in the decision on the motions seeking to resist the jurisdiction of this court is the question of whether the activities complained of fall within the phrase "or otherwise disciplined" in Section 101(a) (5).

The plaintiff contends that if the disciplinary machinery of the union is to be

invoked to obtain the discharge of a member, whether by the union or the company, or both, all procedural safeguards must be observed. He concludes that a union member has a protected right under Section 101(a) to due process in any situation where the disciplinary machinery is invoked against him in his status as a member of the labor organization by said labor organization or any of its officials acting in their official capacity.

The position of the defendants is that the plaintiff was not disciplined in any way by the union; that his discharge from the employ of Food Fair was the result of an unsatisfactory work record and in accordance with the collective bargaining agreement between the union and the employer.

An affidavit by Seymour Gelbond, District Manager of Kings and Nassau Counties for the defendant Food Fair, chronicles a series of transfers of plaintiff among the various stores of Food Fair allegedly because of poor work habits. The plaintiff is characterized as an unproductive and uncooperative worker. It is alleged that "his fellow employees, union members, were constantly complaining that he was soldiering on the job and failing to perform his duties."

Gelbond states that, because of plaintiff's poor work record, in the early part of December 1959, he recommended the immediate discharge of Gross, but that he was requested by Melvin Levy, Personnel Manager, to hold the discharge in abeyance until December 7, 1959. On that date a meeting was held at the union office, at which the Produce Supervisor in charge of all produce departments in the area, two other produce men in charge of two stores, and Gelbond attended. Plaintiff's work record and his nonproductivity were demonstrated by the testimony of these company men. The union agreed not to contest the discharge of the plaintiff in accordance with the collective bargaining agreement.

Gelbond avers that all of the discussions and dealings which took place both prior to December 7, 1959, on December 7, 1959, and subsequent thereto did not deal with the plaintiff's membership rights, but with his conduct and actions as an employee of the defendant Food Fair. He concludes that Food Fair discharged the plaintiff for just cause in accordance with the collective bargaining agreement.

An affidavit by defendant Eugene A. Kennedy, Secretary-Treasurer and General-Manager of the union, is to the same general effect. Kennedy alleges that the examination of facts conducted by the union's Grievance Board related solely to plaintiff's tenure of employment with his employer and was conducted pursuant to the provisions contained in the collective bargaining agreement in force between the union and Food Fair, which read as follows:

"8th: (a) The Employer shall have the right to discharge any employee who has been employed by it for less than thirty (30) days without assigning any cause therefor; thereafter, the Employer shall have the right to discharge any employee for good and sufficient cause only.

"(b) In case of the discharge of an employee who has been in service for more than thirty (30) days, such employee shall have the right to appeal to the Union. Upon such appeal, the Employer and the Union shall jointly investigate the reasons for such discharge and the justification therefor. If the Union and the Employer cannot agree as to the justification for such discharge, then the matter shall be submitted to arbitration in accordance with the provisions of this agreement. In the event that the discharge is found not to be justified, the discharged employee shall be reinstated with full pay for his time lost and with restoration of his privileges and seniority rights.

\* \* \* \* \* \*

"20th. In case of any complaint on the part of either the Employer or the Union, or any individual employee, the matter must be taken up

in the first instance by the Employer and the Union's Grievance Committee or any other authorized official of the Union without delay. Should these parties be unable to adjust the said grievance, the matter must be referred to a Board of Arbitrators consisting of one member selected by the Employer, one member selected by the Union, and a third, who shall act as Chairman, selected by the two as chosen. * * * "

Kennedy stated that a few days prior to December 7, 1959, plaintiff's employer notified the union that it intended to discharge the plaintiff for cause. The union persuaded the employer not to discharge plaintiff until the union's Grievance Board had an opportunity to listen to the facts which the employer deemed justification for such a discharge. Kennedy further alleges that after hearing all the facts and circumstances, the union's Grievance Board concluded that the employer had just cause to discharge the plaintiff and so notified the plaintiff.

The contention of the defendant union is that the meeting of December 7th was not a trial or even a hearing. It constituted merely an inquiry conducted by the union's Grievance Board to ascertain whether the employer had just cause to discharge the plaintiff. Had the Grievance Board not found facts and circumstances to justify such a discharge, an arbitrable dispute between the union and plaintiff's employer would have resulted.

The defendant union reasons that Section 101(a) (5) of the Act can have no application here in that it never preferred charges of any kind against the plaintiff, his conduct and behavior as a union member toward the union and/or its officers and members were never challenged, nor was he the object of disciplinary proceedings brought by the union against him. The plaintiff is still a member of the union in good standing, enjoying all the rights and privileges guaranteed to him by the Constitution and By-Laws of the union and the provisions of Title I of the Act. Thus, the defendants maintain, the plaintiff can-

not claim violation of any right based on his membership in the union which would enable him to invoke Section 102 of the Act. He was not fined, suspended, or expelled from the union, nor was his dismissal from employment with the defendant employer an action of discipline by the union.

Paragraph I. of the complaint reads as follows:

"This Court has jurisdiction over the subject matter of this action under Title I, Section 101(a) (5) and Section 102 of the Labor-Management Reporting and Disclosure Act of 1959. Public Law 86–257 (hereinafter the Act)."

Section 102 of the Act, 29 U.S.C.A. § 412, reads:

"Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

Section 101(a) (5) of the Act states as follows:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

Insofar as Food Fair is concerned, the contention of the defendant, that the ultimate removal of the plaintiff from his job was simply the discharge of an undesirable employee by his employer, appears valid. The actions of the union's Grievance Board related to plaintiff's

tenure of employment with his employer under the collective bargaining agreement between the union and Food Fair. The investigation by the Grievance Board was in effect a complaint to bring about the discharge and justification therefor. Collective bargaining agreement: Discharge: Paragraph 8th (b). The company appears, in effect, to have informed the union that it didn't want plaintiff any longer; that it was up to the union to bring about the dismissal, and it appears that the union readily agreed.

Such a removal of a member from his job is not a subject beyond the contemplation of the union officials. Section 2(a) of the Constitution and By-Laws of Local 1500, in listing the duties and powers of the Executive Board, states: "The Executive Board shall have the right to try, hear and determine and even suspend or expel a member. It may remove a member from his job in accordance with the Constitution." Exhibit B, affidavit of James Gross.

It could not be denied that the suspension or expulsion of a member would have to be carried out pursuant to the safeguards imposed in Section 101(a)(5) of the Act. The removal of a member from his job by the union would clearly appear to be within the phrase "or otherwise disciplined" in the Act. Contentions that the removal here was by Food Fair without intervention of the union do not square with the facts.

While defendants contend that the discharge was solely pursuant to the collective bargaining agreement between Food Fair and the union, the facts disclose that the proceedings closely resembled those set up in Article XVI, Charges and Trials, of the Constitution and By-Laws of the union.

In the collective bargaining agreement, Paragraph 8th (b), it is stated: "In case of the discharge of an employee who has been in service for more than thirty (30) days, such employee shall have the right to appeal to the Union. Upon such appeal, the Employer and the Union shall jointly investigate the reasons for such discharge and the justification therefor." That section clearly seems to require a discharge by the employer first and an appeal therefrom to the union. Here, there was no discharge by the employer at any time and no appeal by the plaintiff. A short cut method seems to have been invoked which combined the vicarious discharge by the union with the trial procedure of the union, simulated, but not equivalent, to that provided by the union Constitution and By-Laws.

The notification to plaintiff advised him to appear "To answer charges brought by the Company for breaking Company Policy." There was no direct suggestion that this was to be a discharge by the company.

Although this hearing was conducted before the Grievance Board instead of the Executive Board, as required by Article XVI of the Constitution and By-Laws, the plaintiff was permitted to appeal his case to the Executive Board. In general, an appeal is in accord with Section 7 of Article XVI. It is difficult to understand why such a further hearing took place if the discharge of the plaintiff was the action of the employer, as represented by the defendants. There is nothing in either the collective bargaining agreement or the Constitution and By-Laws of the union to require such a hearing if this was merely a discharge by an employer. The union itself appears to have regarded the discharge as a disciplinary measure.

The letter from the union to plaintiff's attorney (Exhibit D, affidavit of James Gross) is significant in this regard. This letter notified the plaintiff of the decision of the Executive Board on the appeal of plaintiff from his discharge. The letter stated: "After hearing all of the facts of the James Gross case, the Executive Board sustains the *recommendation of the Grievance Board that he be taken off the job* and report to the employment office of the union." (Emphasis supplied.) There is no mention here of any discharge by the employer, but an indication that plaintiff was taken off the job

directly as a result of the union's disciplinary action.

The apparent situation is one where, because of complaints by the employer, which included complaints by fellow union members, the plaintiff was disciplined by the union by being taken off the job. Since such disciplinary action is covered in Section 101(a) (5) of the Act, this court, by virtue of Section 102 of the Act, has jurisdiction over the subject matter of the action.

Accordingly, the motion of the defendant union to dismiss is denied.

Settle order on notice.

■ The motion by the defendant union for summary judgment is also denied. The union has violated both Section 101(a) (5) of the Act and its Constitution and By-Laws by taking disciplinary action against a member without following the procedure established in its Constitution and By-Laws and affording him the safeguards guaranteed in the Act. Although the relief requested by the plaintiff, that the order of the Grievance Board removing him from his employment be revoked, would not afford him any genuine relief in view of the dismissal of the complaint as against Food Fair (see below), the plaintiff also seeks reimbursement for all wages lost as a result of the removal. In this regard, an issue of fact remains as to the justification for the removal.

### Action Against the Employer

The action against the employer is based solely upon the Labor-Management Reporting and Disclosure Act of 1959, Public Law 86–257, 29 U.S.C.A. § 401 et seq., and not upon diversity of citizenship.

The collective bargaining agreement between the union and the employer provides in substance that in a case of discharge of the employee, such employee shall have the right of appeal to the union, and that upon such appeal the employer and the union shall jointly investigate the reasons for such discharge and the justification therefor. If the union and the employer cannot agree as to justification, arbitration results. If the discharge is found to be unjustified, the discharged employee must be reinstated.

Here, what to the employer resembled joint investigation by union and employer preceded rather than followed the discharge, and it appears that the union rather than the employer controlled the procedure. At the request of the union, the employer consented to the procedure used.

■ I find no indication that the Act provides jurisdiction in this court for an action by an employee against an employer to review a justification or nonjustification for a discharge. As far as I can ascertain, no such federal jurisdiction may be predicated on this Act. Such an interpretation must be clearly apparent to be effective. To entertain such a view might well be to create an unintended avalanche of suits between employee and employer in this court.

Moreover, there is no basis here for such action in this court by employee against employer. No claim or cause of action is set forth and the facts asserted sustain neither the claim alleged in the complaint nor any other claim of which this court may take cognizance. Plaintiff's remedy, if any, for an alleged wrongful discharge must lie in another tribunal. In this regard see Parker v. Borock, 1959, 5 N.Y.2d 156, 182 N.Y.S. 2d 577, 156 N.E.2d 297; In re Soto, 7 N.Y.2d 397, 198 N.Y.S.2d 282, 165 N.E.2d 855. Hence, the action is dismissed against defendant Food Fair.

In Strauss v. International Brotherhood of Teamsters, D.C.E.D.Pa.1959, 179 F.Supp. 297, the court, in referring to Title I of this Act, wrote:

"In short, this Title deals with the *union-member* relationship and in no way supports jurisdiction of a suit involving the *employer* (union)-*employee* (business agent) relationship which is the essence of the present suit. Such a case turns more properly on the common law of employment contracts, or employment

'status' as a property right, matters which are outside the scope of Title I." At page 300.

Settle order on notice.

### The Question of Preliminary Injunction

The plaintiff seeks a preliminary injunction which, by the terms demanded, would be equivalent to a final disposition favorable to him.

■ As a general rule, a preliminary injunction should not issue which would give to the plaintiff the actual advantage which would be obtained in a final decree. W. A. Mack, Inc. v. General Motors Corp., 7 Cir., 1958, 260 F.2d 886; Carey v. General Electric Co., D.C.S.D. N.Y., 1958, 165 F.Supp. 127.

The collective bargaining agreement specifies the procedure to be followed in the event of a discharge of an employee who has been in service for more than 30 days. This procedure, it seems, was varied by the union on approximately more than a dozen occasions when the union persuaded this employer not to discharge this particular plaintiff-employee *before* investigation by the union's Grievance Board. Discharge impended and so the union (by its Grievance Board) and the employer "jointly investigated."

Unfortunately, this procedure, which reversed the order of investigation and discharge by allowing the investigation to precede the discharge rather than to follow it, and which procedure utilizes to a certain degree the trial procedure of the union, gave basis to this action. The result, therefore, was that the union in effect:

(1) Entertained "charges" against plaintiff, brought by the company "for breaking company" policy.

(2) The procedural requirements designated by the union's Constitution and By-Laws, Article XVI, Charges and Trials, were not complied with in the following respects:

(a) The charges were not in writing and did not specify the offenses constituting the violation.

(b) The plaintiff did not receive 10 days' notice in writing as to the time and place of the trial.

(c) The plaintiff contends that he was not given an opportunity to produce witnesses in his defense.

(3) The procedural requirements established in Section 101(a) (5) of the Act as safeguards against improper disciplinary action also were not complied with in that the plaintiff was not:

(a) Served with written specific charges.

(b) Given a reasonable time to prepare his defense; and

(c) Afforded a full and fair hearing.

(4) The Executive Board of the union ultimately reported that "after hearing all of the facts of the James Gross case" it sustained the "recommendation of the Grievance Board that he be taken off the job and report to the employment office of the union."

The union, having elected to proceed in this manner, was bound to comply with procedural methods prescribed in Section 101(a) (5) of the Act and its Constitution and By-Laws. It did not. Therefore, its action was, in my opinion, in violation of Section 102 of the Act.

However, the right of the plaintiff to the preliminary relief sought is necessarily limited by normal equitable principles and by the practicalities of the situation.

■ The main relief requested by the plaintiff is the revocation of the order of the Grievance Board removing plaintiff from his employment at Food Fair. Even if this relief were granted, it is difficult to see how the plaintiff would be materially benefited. The motion by Food Fair to dismiss the complaint as to it has been granted. In practical effect, Food Fair has indicated that it no longer wishes to enjoy the services of the plaintiff. That it left the mechanics of the severing of the relationship to the union does not alter the basic result. Since Food Fair is no longer a party to the action, this court would have no juris-

diction to order it to reinstate the plaintiff. With that background, the court would not do the vain act of instructing the union to revoke the order removing plaintiff from his job.

Furthermore, there is no showing that money damages will not be an adequate remedy or that plaintiff will suffer irreparable injury if a temporary injunction is denied. See American Visuals Corp. v. Holland, 2 Cir., 1955, 219 F.2d 223; Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 1953, 208 F.2d 464; Carey v. General Electric Co., D.C.S.D. N.Y.1958, 165 F.Supp. 127.

The plaintiff's motion for preliminary injunction is accordingly denied.

Settle order on notice.