Anthony **TOMKO**, Appellant,

v.

Paul **HILBERT** and Michael Kreheley.

No. 13394.

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1961.

Decided March 28, 1961.

Harry Alan Sherman, Pittsburgh, Pa., for appellant.

J. Alfred Wilner, Pittsburgh, Pa. (Ines W. Cordisco, McKeesport, Pa., Ernest G. Nassar, Donald J. Lee, Wilner, Wilner & Kuhn, Pittsburgh, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This appeal requires us to determine whether Title I ("bill of rights") of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 73 Stat. 519, 29 U.S.C.A. § 401 et seq., regulates the conduct of private individuals not acting as agents or representatives of any labor organization.

Tomko, appellant, commenced an action under the bill-of-rights section of the LMRDA for damages and an injunction, alleging that Hilbert and Kreheley, appellees, libeled and assaulted him, and that by means of threats, force and disorderly conduct, unlawfully interfered with his rights as a member and officer of Local 1408, an affiliate of the United Steelworkers of America ("USW"). The action was brought against appellees in their individual capacites, although both are officials of District 15 of the USW. Appellant does not allege that any labor organization or any officer or agent thereof acting in an official capacity has violated his rights under the bill of rights.

The district court dismissed the action because of the appellant's failure to exhaust the remedies provided for by the USW's constitution. This, appellant contends, was reversible error. We need not reach this question, however, for it is our conclusion that the LMRDA does not pro-

vide a civil remedy for the vindication of rights contained in the bill of rights against one who in violating such rights is not acting in the capacity of an official or agent of a labor union. This interpretation results not only from the language of the LMRDA, but from a consideration of its purpose, the evils it was meant to cure, its legislative history, and what few pertinent decisions are available.

The need for and purpose of enacting the LMRDA is clearly set forth in subsection 2(a), 29 U.S.C.A. § 401(a), of the preamble, which states that in order to realize a free flow of commerce, "it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations." Subsection 2(b), 29 U.S.C.A. § 401(b), shows that Congress concluded that as a result of certain investigations that had been conducted in the labor-management field, further and supplementary legislation was necessary to protect the rights and "interest of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." In subsection 2(c), 29 U.S.C.A. § 401(c), Congress declared "that the enactment of this Act is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives * * *."

The provisions with which we are chiefly concerned are contained in Title I. Under subsection 101(a) (1), 29 U.S.C.A. § 411(a) (1) every union member has equal rights and privileges of participation in the internal affairs of the union subject to reasonable ·rules and regulations of the union's constitution or bylaws. Subsection 101(a) (2), 29 U.S.

C.A. § 411(a) (2) guarantees a union member the right of free speech and assembly as regards union activities, subject again, however, to any reasonable rules and regulations that a union may adopt to protect itself as an institution. Procedures for increasing dues, initiation fees, and levying assessments by the union are meticulously spelled out in subsection 101(a) (3), 29 U.S.C.A. § 411(a) (3), while subsections 101(a) (4) and (5), 29 U.S.C.A. §§ 411(a) (4) and (5), protect the member's right to sue the union and provide procedural safeguards for improper disciplinary action by the union. Sections 104 and 105, 29 U.S.C.A. §§ 414 and 415, require the union to provide its members with copies of the collective bargaining agreement and information concerning the provisions of the LMRDA. The civil enforcement provisions of the bill of rights, section 102, 29 U.S.C.A. § 412, provides that "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." There is no indication here that the substantive provisions of the bill of rights can be enforced against any *person* as that term is defined in subsection 3(d), 29 U.S.C.A. § 402(d).[1] In contrast, Title II, 73 Stat. 524, 29 U.S.C.A. § 431 et seq., which imposes a duty on labor organizations, their officers and employees, and employers to prepare and file certain enumerated reports, can be enforced by a civil action under section 210, 29 U.S.C.A. § 440, against *any person*. Also, criminal sanctions are contained in section 610, 29 U.S.C.A. § 530, which makes it unlawful

[1]. " 'Person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers."

for *any person* through threats or the use of force or violence to attempt to or to in fact interfere with or prevent the exercise of any or all rights that a union member may have under any of the titles of the LMRDA. Section 609, 29 U.S.C.A. § 529, protects union members who attempt to enforce their rights under the LMRDA against recriminatory acts of labor organizations or their representatives and not the world at large.

A recapitulation of other pertinent provisions of the LMRDA clearly shows that its operation is narrowly focused on protecting the union-member relationship. Title II specifies certain reports that must be prepared and distributed by labor organizations, their officers, and employees, and employers.[2] In Title III, Congress delineated with particularity the circumstances under which a trusteeship may be established and the administration of and powers possessed by a union in trusteeship.[3] The frequency of and procedure for conducting elections for enumerated union officers is covered by Title IV.[4] Safeguards for the preservation of union funds are contained in Title V, which prescribes a code of fiduciary responsibility on the part of union officers, disqualifies certain persons from holding office in a union or acting in other enumerated capacities, prohibits unions from paying fines incurred by its officers or employees, and greatly restricts loans that a union can make.[5]

A chronological review of the LMRDA's legislative history begins with the Kennedy-Ervin bill. It did not contain a bill-of-rights section.[6] In referring to that bill, Senator McClellan said, during congressional debate:

" * * * It does not afford adequate sanctuary to the exploited and the oppressed. I propose, therefore, Mr. President, to offer some strong amendments—amendments that will be in the interest primarily of workers—of union members and for their protection; *amendments designed to insure greater integrity in the administration and management of union affairs.*"[7] (Emphasis supplied.)

During debate on the amendment that he proposed and that the Senate passed,[8] Senator McClellan said:

"Mr. President, I do not believe that racketeering, corruption, abuse of power, and other improper practices *on the part of some labor organizations* can be, or will ever be, prevented until and unless the Congress of the United States has the wisdom and the courage to enact laws prescribing *minimum standards of democratic process and conduct for the administration of internal union affairs.*"[9] (Emphasis supplied).

While the amended Kennedy-Ervin bill was still in the Senate, the so-called Kuchel substitute was offered for the McClellan bill of rights, the substantive provisions of which were, however, in the main retained.[10] From the debates

---

2. Sections 201–210, 29 U.S.C.A. §§ 431–440.

3. Sections 301–306, 29 U.S.C.A. §§ 461–466.

4. Sections 401–404, 29 U.S.C.A. §§ 481–483.

5. Sections 501–504, 29 U.S.C.A. §§ 501–504.

6. S. 1555, 86th Cong., 1st Sess. (1959).

7. 105 Cong.Rec. 6472, 86th Cong., 1 Sess. (1959).

8. The McClellan amendment, S. 1137, 86th Cong., 1st Sess. (1959), is reproduced in 105 Cong.Rec. 6475–6476. It was adopt-

ed by a vote of 47 to 46 on April 22, 1959. 105 Cong.Rec. 6492–6493.

9. 105 Cong.Rec. 6471, 86th Cong., 1st Sess. (1959).

10. The substitute was offered on April 24, 1959, and is reproduced in 105 Cong.Rec. 6693–6694, 86th Cong., 1st Sess. (1959). In referring to the McClellan amendment, Senator Kuchel said: "Thus, with some of my colleagues on this side of the aisle and with some of my colleagues on the other side of the aisle, I began to explore the possibility of keeping that which the Senator from Arkansas advocated, namely, a bill of rights for labor, but of writing those rights in clear, un-

that followed, it is clear that the Kuchel substitute was likewise limited to regulating the activities of unions and their officials and agents as they affect the union-member relationship.[11]

The House of Representatives in enacting the Landrum-Griffin bill as a substitute for the Senate bill retained the bill-of-rights provisions of the Senate bill with minor modification.[12] During debate in the House, Representative Griffin, one of the floor managers, stated: "The labor reform legislation before the House at this time is directed at the regulation of the internal affairs of unions."[13] Representative Derwinski brought congressional intent into sharp focus when in debate he said:

" * * * A bill of rights giving the rank-and-file union member full protection of his rights as a union member must be adopted. The purpose of the bill of rights is to protect union members against the rules and practices of some unions which effectively stifle all expression of opposition to the union bosses."[14]

Earlier that same day, Representative Arends said:

" * * * It certainly behooves us to provide by law adequate protection of the individual workingman in his basic rights. We must make certain that he is fully protected in his right to be free from employer interference and his right to be free from union domination. It has been abundantly and conclusively

demonstrated by the investigations and studies that have been made that he does not now have that protection. * * * "[15]

After the conference committee reported, the Landrum-Griffin bill passed the Senate where during debate additional light was thrown on congressional intent. Senator Mundt made the following observation:

"This proposed legislation, as presently before us, goes a big step forward in restoring balance between the right of the trade union member and the right of the officer or the official who functions as the top bargaining agent of his union."[16]

Senator Ervin, a co-sponsor of the original Kennedy-Ervin bill, succinctly summed up the purpose of the LMRDA when he said:

"This the members of the conference committee have done in an admirable way. They have recommended to Congress the enactment of a bill which deals adequately with the malpractices in the internal affairs of unions as well as with coercive picketing, secondary boycotts, hot cargo contracts, and the no man's land in labor law."[17]

To sum up, the LMRDA gives to the individual union members certain rights which when interfered with by a union, its officials or its agents, can be redressed civilly against them. In addition, there are criminal sanctions imposed

mistakable, reasonable, and just terms. That is what we tried to do." 105 Cong. Rec. 6717. One of the most significant changes was deletion of a provision whereby the Secretary of Labor could bring a civil action to enforce the substantive provisions of the bill of rights.

11. 105 Cong.Rec. 6717–6727, 86th Cong., 1st Sess. (1959).

12. H.R. 8400, 86th Cong., 1st Sess. (1959). In H.Report No. 741, 86th Cong., 1st Sess. (1959), Congressmen Landrum and Griffin, who proposed the bill that passed the House, stated that its bill-of-rights provisions were essentially

identical to those contained in the Senate bill. 2 U.S.Code Cong. & Adm.News, 86th Cong., 1st Sess. (1959), p. 2497.

13. 105 Cong.Rec. 15722, 86th Cong., 1st Sess. (1959).

14. 105 Cong.Rec. 15700, 86th Cong., 1st Sess. (1959).

15. 105 Cong.Rec. 15690, 86th Cong., 1st Sess. (1959).

16. 105 Cong.Rec. 17914, 86th Cong., 1st Sess. (1959).

17. 105 Cong.Rec. 17913, 86th Cong., 1st Sess. (1959).

against *any person* who interferes with those rights.

Appellant does not allege that a labor organization or any official or agent acting in its behalf has instigated or performed the acts complained of. The caption of the complaint simply refers to the appellees as "Paul Hilbert and Michael Kreheley, Defendants." Counsel for appellant in attempting to explain the nature of this action said during a colloquy with the district judge: "Now, we have a right to prevent a continuous tort. We have a right to keep you out of the hall or keep you civil when you get in as a guest in our hall. We have a right to protection for we have freedom of speech and freedom of assembly." Shortly thereafter, the district court said to appellant's counsel: "You come in and contend they commit tortuous [sic] acts." In his brief, appellant stated: "The complaint herein does not claim plaintiff was denied rights as a member by his union. Does he, because he is a union member, lose his right as a citizen to apply for equitable relief against continuing torts committed by individual defendants?" Appellant may well have such right, but it is not contained in the bill of rights and cannot be vindicated in a federal court absent diversity. Clearly, there is no diversity among the parties here.

▬▬ Private misconduct which incidentally may frustrate appellant's rights as a union member does not give rise to an action under the bill-of-rights section. As we have demonstrated above, it certainly was never the intention of Congress to open the federal courts to the adjudication of ordinary tort claims merely because the conduct occurs in a union hall during a union meeting and none, one, or all of the participants are union members. Could a simple assault and battery on a union member arising out of a personal feud be vindicated under the bill-of-rights section merely because it occurs at a union meeting? We

think the answer is obvious. The state courts remain open to appellant. Rights and remedies that he may have under state law have not been preempted or affected by passage of the bill-of-rights section of the LMRDA.[18]

Though involving different facts, several recent decisions fully support our interpretation of the limits of the LMRDA. Gross v. Kennedy, D.C.S.D.N.Y. 1960, 183 F.Supp. 750; Jackson v. Martin Co., D.C.Md.1960, 180 F.Supp. 475. See also Smith v. General Truck Drivers Union, Local 467, D.C.S.D.Cal.1960, 181 F.Supp. 14. While holding that the bill-of-rights provision of Title I did not give the federal courts jurisdiction to adjudicate claims arising out of a breach of an employment contract between a business agent and the defendant union, the court in Strauss v. International Brotherhood of Teamsters, D.C.E.D.Pa. 1959, 179 F.Supp. 297, 300, said:

> "* * * Without entering into a detailed discussion of each of its provisions, we observe that this part of the Act deals with (and is directed toward) the *membership in general* and their relationship, *as members,* with their union. * * *
>
> "In short, this Title deals with the *union-member* relationship * * *." (Emphasis in original.)

In Allen v. Armored Car Chauffeurs Union, Local 820, D.C.D.N.J.1960, 185 F. Supp. 492, a union member brought an action under the bill-of-rights section against his employer for an allegedly wrongful discharge and against the union for failure to prosecute a grievance. The union moved to dismiss for lack of jurisdiction, contending that the bill-of-rights section applied only to questions concerning the internal political and civil rights that exist between the union and its members. In granting the motion, the court said at 185 F.Supp. 494:

> "* * * It is quite clear from a reading of Title I that its intent

18. "Nothing contained in this title shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization." § 103, 29 U.S.C.A. § 413.

was to protect a Union member from the violation of his rights as against the Union only, and only as specified in Title I."

Recently, this court in Hughes v. Local No. 11, 3 Cir., 287 F.2d 810, held that an action did lie under the LMRDA against a *union* for its refusal to accept a transfer of membership from another local of the same international.

The order of the district court will be affirmed.

HASTIE, Circuit Judge (concurring in result).

The court below entered judgment against the plaintiff because he had not sought administrative redress, which seemed to be available to him within his labor organization, before instituting this action under the Labor Management Reporting and Disclosure Act of 1959. Section 101(a) (4) of the Act, 29 U.S.C.A. § 411(a) (4), provides that any aggrieved union "member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *." Pursuant to this provision the court below concluded that there appeared to be avenues of redress available to the plaintiff within the labor organization which seemed reasonably calculated to correct such a wrong as he alleged. Though, on the present record, the appropriate intra-union procedures are not made as clear as one might wish, I think enough appears to justify the district court's conclusion. For this reason I would affirm the judgment, making it clear that the plaintiff would not be barred from again asking the court for relief, if the union should reject his claim or dispose of it arbitrarily.

This court's basis of affirmance is quite different. It finds that this suit cannot be maintained because the plaintiff does not allege or sufficiently indicate that the defendants, in their wrongful interference with a local union meeting, acted under color of and in abuse of their authority as regional representatives of the International Union. Even though the defendants are described as representatives of the International Union, the complaint is viewed as alleging misconduct unrelated to this official capacity. If this were the only defect in the plaintiff's case, I would at most direct that the complaint be dismissed with leave to plead over.