Herbert **HARRIS**, William McCoy, Richard Martin, Charles McClellan, Wylie Milner, A. Welly, Fred Jackson, R. Byrd, Columbus Oliny, Joe A. Fliks, A. B. Johnson, Johns Crelkin, Yakooh Habah, James Farthing, George Baskerville, George Cheets, Belton Hammett, Abdullah Ahmad Bey, James Rich, Harry Ford, Columbus Lowry, Burwell Harris, Herbert McCoy, W. Budd, Bernie Quaos, Charles Duera, Cecil Shaw, Wilkie Johnson, Wright Williams, Joseph Colter, and Fred Bell

v.

The **INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL NO. 1291**

and

**Richard L. Askew, President of Local No. 1291.**

Civ. A. No. 31377.

United States District Court
E. D. Pennsylvania.

May 15, 1962.

---

Dorfman, Pechner, Sacks & Dorfman by Harry Lore, Philadelphia, Pa., for plaintiffs.

Abraham E. Freedman, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

Plaintiffs (members of Local 1291) claim a denial of the rights, particularly the right to express their views, arguments and opinions and their views upon Union business at its meetings, assured them by the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S. C.A. § 411). See Hughes v. Local No. 11 of Intern. Ass'n of Bridge, etc., 287 F.2d

810 (3rd Cir.1961). Plaintiffs and respondents presented testimony on May 8–11, inclusive, so that court action could be taken on the Motion prior to the regular monthly meeting of May 15, 1962.

Only two of the plaintiffs [Herbert (called "New York") Harris and Bey] testified in support of this action and three of the plaintiffs (Milner, Budd and Martin) testified that they had been misled in signing a power of attorney which authorized plaintiffs' counsel to bring this suit on their behalf. New York Harris had told them that, by signing the paper he presented to them, they would be protesting a proposed mandatory use of a central hiring point for all longshoremen and had not advised them either that a court suit would be brought or that it would claim a denial of the rights of the members of Local 1291 to speak at, make motions at, and participate in the Union meetings. I find that New York Harris did not testify accurately[1] and that these three plaintiffs were misled by him into signing the powers of attorney presented to them in such a manner that they did not see the typewriting on the pieces of paper (Exhibits P–6A and P–6B).

On this record, this court should not grant plaintiffs the relief they request in view of the provision in 29 U.S. C.A. § 411(a) (4) "that any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof" and the following language in Article XIX, Section 5, of the Constitution (page 39 of Constitution attached to Respondents' Motion docketed as No. 3 in the Clerk's file):

"No member * * * shall institute any civil action, suit or proceeding in any court against the I. L. A., any of its Local Unions * * * or any officer * * * of

1. It is significant that Harris was not called to rebut the testimony of these three plaintiffs.

any of its Local Unions * * * on account of any controversy for which a remedy by trial or appeal is provided for in this Constitution, unless and until he has first exhausted all such remedies of trial and appeal."

See Tomko v. Hilbert, 40 Labor Cases 71,245 (par. 66,757) (W.D.Pa.1960), aff'd on other grounds 288 F.2d 625 (3rd Cir. 1961).

Although the procedure for appeals specified in Article XIX is not crystal clear, Bey was notified of the appeal procedure by letter of April 9, 1962 (P–3), as follows:

"You should first go through the Local Union, then to the District Council, then to the District and lastly, if no decision is reached your appeal should then be heard by the Executive Council of International al."[2]

Section 6 of Article XIX makes clear that, where an appellant contemplates court action, he should file a copy of his appeal with the Executive Council within 90 days. The uncontradicted testimony of Mr. Moock (District Vice President) presented in this case was that this Council (or Board, as he called it) met regularly and acted promptly. No good reason has been shown why plaintiffs could not have secured a decision from this Council within 120 days of any alleged improper action of officers of Local 1291 before instituting this suit.

The only complaint, under the above Congressional Act,[3] of the above-mentioned plaintiffs, Harris and Bey, which requires discussion[4] is that a motion, which Bey alleges that he made at a Union meeting on April 17, 1962, and that two members seconded,[5] was not put to a vote. The motion, as described by Mr. Bey, was apparently for the appointment of a seven-man committee from the rank and file committee to deal with possible technological unemployment resulting from changes in the method of unloading sugar,[6] both in operations under the

---

2. A copy of this letter was sent to Moock (D–3) and he personally talked to Bey on April 17, 1962, at which time Bey did not ask for information concerning his appeal remedies under the Constitution and did not state that he was going to bring a court action.

3. New York Harris's general contention that the officers will not entertain any motion that is not in accordance with their viewpoint is not supported by the weight of the evidence. (See, for example, testimony of even the witnesses called by the plaintiffs that the May 3, 1962, meeting was a fairly conducted meeting and that a motion concerning a central hiring point made at that meeting was opposed by the President of Local 1291, but was put before the membership and adopted by a majority of the members.) It is also noted that the United States Court of Appeals for the Third Circuit said in the Hughes case, supra, 287 F.2d at p. 818:

"* * * there is no warrant in the statute for granting a member of a labor organization any other membership rights secured to him by the union's constitution and by-laws which are enforceable only under state law in a suit such as that at bar. If, therefore, it is determined on remand that Hughes is entitled to relief, insofar as it is predicated on the Act, such relief must be limited to that appropriate to secure to Hughes the equal rights and privileges guaranteed by Section 101(a) (1) and other provisions of the Act."

The facts in Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2nd Cir. 1961), relied on by plaintiffs, are quite different from those in this record.

4. There has been no showing that the other plaintiffs approved this suit by signing P–6A to C, inclusive, and the hearing judge, in view of the record, does not accept the testimony of Harris that he made clear to all the plaintiffs that, by signing the papers marked P–6A to C, they were authorizing a suit to be brought to secure a decent meeting.

5. There is a conflict in the testimony on whether or not such a motion was made. The minute book shows that a motion was made "that the membership elect a Committee of seven members to attend the wage scale conference to be drawn from the rank and file" but that "There was no seconder of this motion" (p. 117 of P–5).

6. Pursuant to § 13(d) of the current collective bargaining contract (pp. 13 and 14 of D–4), a fund has been established

existing contract (D–5, pp. 13 & 14, § 13(d)) and in negotiations for a new contract which will take effect October 1, 1962. Assuming that this motion was made,[7] Bey or any other member of the Union could appeal in writing to the whole membership from the failure of the officers to put this motion to a vote and, if this appeal is denied, thence to the Executive Council, as provided in § 6 of Article XIX. Such appeal to the whole membership can be taken at tonight's meeting. It is clear that Harris and Bey, as well as most of the Union members who testified for them, are working together in opposition to what they consider as improper Union procedures. This group relies on Bey for leadership and he received the outline of the appeal procedures in the above-mentioned letter of April 9, 1962 (P–3).

It is noted that a Union meeting was held on May 11, 1962, for the purpose of electing so-called "rank and file" (not officials of the Union) members to participate in the negotiations for the new collective bargaining contract to take effect October 1, 1962.

Plaintiffs have not sustained their burden of persuasion on the following points:

A. Their contention that the "whereas clause" in the Resolution submitted and approved at the meeting of April 17, 1962, providing that the officers had not received "a wage increase" for "over five years" (p. 114 of P–5), was a misrepresentation.[8]

B. Any contention that Bey and Harris have not been accorded a reasonable opportunity to present their views and arguments over a period of years, as contended by them. It is significant that this suit was filed at a time of general rank and file dissatisfaction with the Union leadership over the use of a central hiring point, which has never been a past objection of theirs, even though they have been dissatisfied with the Union leadership for several years (see Exhibits D–1, P–1, P–2 and P–4) and have been unsuccessful candidates in opposition to the present President of Local 1291.

Since there has been confusion at the meetings in the past which may have operated to make it difficult for those opposed to the officers to present their views, this Motion is being denied without prejudice and it may be renewed at any time that Bey is denied the rights assured him by 29 U.S.C.A. § 411 in the light of the first proviso of § 411(a) (4).

for the benefit of those prejudiced by recently established bulk sugar unloading procedures at the National Sugar Refining Company piers (see Complaint in C.A. 30789, marked P–4) and notice has been given by Local 1291 that negotiations will be conducted for a similar arrangement with the American Sugar Refining Company and wherever any other threat of technological unemployment may arise.

7. See footnote 5 above for a description of the motion as contained in the minute book (P–5).

8. The testimony of J. S. Kane discloses that amounts reported on the Labor Organization Financial Report (Form LM 2) for 1960 (P–14) exceeded the amount reported on the corresponding Report for 1959 (P–13) because of the financial inability of Local 1291 to pay the three

salaried officers their full vacation pay in 1959 and the payment to those officers in 1960 of these items, in addition to the $115. per week salary and full vacation pay for that year: (1) unpaid vacation pay due for 1959 and 1958, and (2) pay for six paid holidays (see D–6). Although these three officers received in 1961 3 weeks' extra pay for overtime work (D–6) due to extra work required of them incident to the introduction of the check-off system, plaintiffs have shown no persuasive reason why this compensation for new and extra work should be considered as "a wage increase." In fact, after a year's experience with this work, the officers asked for "a wage increase" so that their three salaries would "equal" those of Local 1242 and such increase was approved after debate on the motion.